**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| BRANDY LEA BIRDWELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01792 |
| ) | |
| VICKI FREEMAN, Warden, ) | Judge Campbell |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Brandy Lea Birdwell, a state prisoner incarcerated at the Tennessee Prison for Women in Nashville, Tennessee, filed a *pro se* petition and supporting memorandum of law under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF Nos. 1, 2). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review. For the reasons set forth herein, the petition will be denied and this action dismissed with prejudice.

### I. PROCEDURAL BACKGROUND

On August 21, 2008, the petitioner was found guilty by a Davidson County Jury of first-degree felony murder and especially aggravated robbery, under a theory of criminal responsibility. The petitioner received an automatic, statutory life sentence on the murder conviction. On September 17, 2008, the trial court sentenced the petitioner to a prison term of twenty years at 100% on the robbery conviction, to be served concurrently with the life sentence. (ECF No. 23-1, at 17–18 (judgments); *see* ECF No. 23-14 (court order denying post-conviction petition).) Her conviction and sentence were affirmed on direct appeal. *State v. Birdwell*, No. M2009-00722-CCA-R3-CD, 2010 WL 3582489 (Tenn. Ct. Crim. App. Sept. 15, 2010), *perm. appeal denied* (Tenn. Feb. 17, 2011).

On October 27, 2011, the petitioner filed a state-court petition for post-conviction relief. (ECF No. 23-14, at 7–29.) The trial court conducted a hearing at which the petitioner, her mother, and her trial attorney testified. (Hearing Tr., ECF No. 23-15.) The trial court denied the petition. (ECF No. 23-14, at 33–54.) That decision was affirmed on appeal as well. *Birdwell v. State*, No. M2012-02062-CCA-R3-PC, 2013 WL 6405733 (Tenn. Ct. Crim. App. Dec. 6, 2013), *perm. appeal denied* (Tenn. April 9, 2014).

Petitioner Birdwell filed her petition under 28 U.S.C. § 2254, along with a supporting memorandum, in this Court on July 11, 2014. The respondent has filed an answer along with a complete copy of the underlying state-court record. The petition is timely, and this Court has jurisdiction.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> On November 6, 2007, Jared Collins was shot and killed in the parking lot of the Last Chance Liquor Store and Market on Dickerson Pike in Nashville, Tennessee. Appellant, Reginald Atkins, and Darrell Thompson were identified as suspects in the crime. In January of 2008, the three were indicted for first degree felony murder and especially aggravated robbery.
>
> On November 6, 2007, Mr. Collins had gone to the liquor store around 5:00 p.m. Around that same time, Appellant decided to go to the store to get juice and cigarettes. Appellant drove her truck to the market along with Ralethia Mayfield, also known as "Tierra," Mr. Atkins, and Mr. Thompson. When they arrived at the market, Appellant parked the truck at the side of the store. The two men got out of the truck first while Appellant was getting a few things out of her purse. At that point, there are various accounts of what happened. Ultimately, as Mr. Collins was leaving the store, it appears that he was approached by Mr. Atkins and Mr. Thompson. The men started tussling. A witness heard one of the men demand "the damn money." Mr. Collins gave the men "everything he had" in his possession and turned to run into the market that was next door to the liquor store. As Mr. Collins ran away, one of the men shot him in the back. The gunshot was witnessed by the owner of the market, Tewodros Tashu. Mr. Tashu heard the shot and saw Mr. Collins literally fall through the door of the store. As he fell, he pleaded with Mr. Tashu to "save me, save me, this is all of the money I got." Mr. Collins died as a result of the gunshot wound to his back.
>
> After the shooting, Mr. Atkins and Mr. Thompson were seen jumping into the back of a white Ford pickup truck. Appellant was identified as the driver of the truck by Christy Dean, Mr. Collins' friend and a passenger in his vehicle. Ms. Dean had previously seen Appellant driving the same truck at a neighbor's house. Ms. Dean also recognized the other two defendants from the same location.
>
> Officer Po Cheng of the Metropolitan Nashville Police Department was on patrol at the time of the incident. As he was driving by the market, someone flagged him down. Officer Cheng realized that someone had been shot. He found Mr. Collins unresponsive.
>
> The next day, Appellant was arrested by Detective Paul Harris. She was arrested at her residence, and the white Ford truck was seized. When the truck was searched, police recovered spent .38 caliber cartridge cases inside the front center console, a live .38 caliber round from the driver-side door compartment, and two live .38 caliber rounds from Appellant's purse.

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Four days later, Detective Harris executed a search warrant at Appellant's residence. When the residence was searched, a fully loaded .38 caliber revolver was recovered from inside a slow cooker. Appellant's mother informed the detective that she was the owner of the weapon. Appellant's mother was angry at Appellant when she noticed that the weapon was not in its usual spot on the bedside table the day after the shooting. Appellant's mother retrieved the gun from Appellant and put it in the slow cooker so that Appellant would not know where the gun was located.

A firearm identification analysis was performed by the Tennessee Bureau of Investigation. The results indicated that the bullet that killed Mr. Collins was fired from the gun seized at the Appellant's residence. In addition, spent cartridge cases in the truck and the home had also been fired from the same revolver.

Appellant testified on her own behalf at trial. She admitted that she knew both Mr. Atkins and Mr. Thompson. According to Appellant, on the day of the shooting, she got off work and went to a friend's house on Penncock Avenue. Mr. Atkins and Mr. Thompson were there, and everyone started drinking. Around 4:30 or 5:00 p.m., Appellant needed cigarettes and juice. Appellant, Mr. Atkins, Mr. Thompson, and Ms. Mayfield loaded up in the truck and went to the market.

When they arrived at the market, Appellant parked the truck on the side of the building. She let Mr. Atkins and Mr. Thompson out of the truck. Appellant riffled through her purse to find her driver's license. At that time, Ms. Mayfield exclaimed, "They got him, they got him." Appellant could not see what was going on from where she was standing, so she backed up and was able to see Mr. Atkins and Mr. Thompson engaged in an altercation. Appellant heard a gunshot. The next thing she knew, Mr. Atkins and Mr. Thompson were jumping in the back of the truck.

Appellant drove off down an alley to Cleveland Street. Once they got onto Ellington Parkway, Appellant pulled over and the men got inside the cab of the truck. Appellant claimed that she had no idea what had happened at the market. She continued to drive around Nashville as she was ordered to do so by Mr. Atkins and Mr. Thompson. Eventually, Appellant dropped the men off at a house in Madison. Appellant went home and went to bed. According to Appellant, she was surprised when she learned that her mother's gun was used in the crime. Further, Appellant insisted that she did not know that a robbery was going to occur.

*State v. Birdwell*, 2010 WL 3582489, at *1–2. As previously indicated, based on this evidence, the jury returned a guilty verdict against Birdwell on the charges of first-degree felony murder and especially aggravated robbery.

## III. ISSUES PRESENTED FOR REVIEW

In her petition for habeas corpus, Birdwell asserts that the conviction violated her constitutional rights on the following grounds:

1. That the evidence was insufficient as a matter of law to support the convictions for first-degree felony murder or especially aggravated robbery under a theory of criminal responsibility;

2. That the trial court erred in admitting evidence of petitioner's pending shoplifting charge, in violation of Rules 608 and 609 of the Tennessee Rules of Evidence;

3. That the petitioner's Fifth Amendment right not to be compelled to be a witness against herself was violated at trial; and

4. That the petitioner was deprived of her Sixth Amendment right to the effective assistance of trial counsel insofar as counsel failed to:

    (a) adequately prepare for trial;

    (b) protect the petitioner's Fifth Amendment right;

    (c) request a proper jury-out conference to discuss why evidence of the pending shoplifting charge was inadmissible;

    (d) adequately prepare and advise the petitioner prior to her testimony at trial;

    (e) subpoena material witnesses; and

    (f) properly advise the petitioner regarding the state's plea offer, the material elements of discovery, and the petitioner's actual chances of being convicted at trial.

## IV. STANDARD OF REVIEW

A habeas petitioner bears the burden of demonstrating that she has properly and fully exhausted her available state-court remedies with respect to the claims she presents for federal habeas review. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citation omitted). If, however, an unexhausted claim would be procedurally barred under state law, for

instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Id.* at 385–86 (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The "cause" standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Wogenstahl*, 668 F.3d at 321 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted)). A fundamental miscarriage of justice results when one who is actually innocent is convicted. *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011).

Even when claims have been fully exhausted in the state court, this Court's review is quite limited. First, the Court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Where the petitioner presents a fully exhausted claim that he is in custody in violation of his constitutional rights, under § 2254(d), this Court may not grant relief unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal

law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

With these principles in mind, the Court will turn to the examination of the claims raised in Birdwell's petition for habeas relief.

## V. ANALYSIS AND DISCUSSION

### A. Claim 1: Insufficiency of the Evidence

Birdwell asserts that the evidence presented at trial was insufficient to convict her of criminal responsibility for felony murder or aggravated robbery. She maintains that she had no prior knowledge that Reginald Atkins and Darrell Thompson intended to rob anyone, was unaware that the robbery and murder were taking place when they did, and was surprised to discover that her mother's gun had been used to perpetrate the crimes. She also insists that there was no evidence introduced at trial that a robbery had actually occurred, because the state offered no evidence that any item of value was taken from the victim.

The Tennessee Court of Criminal Appeals considered this claim, first articulating the standard of review:

> When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption and replaces it with one of guilt. Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. In making this decision, we are to accord the State the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. Moreover, we may not substitute our own inferences for those drawn by the trier of fact from circumstantial evidence. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.

*State v. Birdwell*, 2010 WL 3582489, at *3 (internal quotation marks and citations omitted). Although the court

did not expressly refer to federal law, the state-court precedent on which it relied is consistent with the federal standard enunciated by the Supreme Court, pursuant to which evidence is sufficient to support a conviction if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

After framing the standard of review, the state court enumerated the elements of the crimes of felony murder and especially aggravated robbery under Tennessee law. Because the conviction was premised on a theory of criminal responsibility, the court also examined the law concerning when a party may be criminally responsible for an offense and considered whether the trial court adequately instructed the jury as to criminal responsibility. *State v. Birdwell*, 2010 WL 3582489, at *4–5. The court then reviewed the evidence presented at trial and concluded that, viewed in the light most favorable to the state, the evidence was sufficient to support the conviction, as follows:

> In the light most favorable to the State, a rational trier of fact could have found the elements of felony murder and especially aggravated robbery. The proof showed that Appellant [Birdwell], Mr. Atkins, Mr. Thompson, and Ms. Mayfield rode to the market in Appellant's truck. Appellant parked the truck on the side of the building and remained in the truck while Mr. Atkins and Mr. Thompson got out of the truck. The men walked around to the front of the market, attacked the victim, and demanded his money. After the victim gave the men his money and tried to run away, one of them shot the victim in the back with Appellant's mother's gun. Immediately after the shooting, Appellant backed up her truck and allowed Mr. Atkins and Mr. Thompson to jump in the back of her truck. She drove the men around for a bit before stopping the truck and allowing them to get into the cab. They drove around for several hours before Appellant eventually took the men to a house in Madison. Appellant argues that because she was unaware that Mr. Atkins and Mr. Thompson were going to rob and kill the victim she cannot be guilty of felony murder or especially aggravated robbery. However, the jury was instructed on the theory of criminal responsibility, as described above. Appellant clearly associated herself with the robbery herein by acting as the getaway driver. Further, the murder weapon was found at Appellant's home and .38 caliber casings that matched the bullet that shot and killed the victim were found in her purse and in her truck. When the weapon was found, it was fully loaded. The jury could have inferred that Appellant knew that the gun had been used and reloaded it in an attempt to cover up the crime. The jury heard the evidence and determined that Appellant was criminally responsible for both the murder and robbery. The proof was sufficient to support Appellant's convictions for felony murder and especially aggravated robbery. Appellant is not entitled to relief on these issues.

*Id.* at *5.

This Court cannot find that the state court's decision was either contrary to or involved an unreasonable application of clearly established federal law, or that its determination of the facts was objectively unreasonable. Given the evidence presented at trial, a rational juror could certainly find that

petitioner was criminally responsible for the offenses for which she was convicted. The petitioner is not entitled to relief on the basis of this claim.

### B. Claim 2: Violation of the Tennessee Rules of Evidence

The petitioner next contends that the trial court erred in admitting into evidence oral testimony related to her pending shoplifting charges in violation of Rules 608 and 609 of the Tennessee Rules of Evidence. The petitioner, however, does not allege that the trial court's alleged error amounted to a violation of the federal Constitution, and her challenge to the state court's admission of evidence is not a cognizable basis for federal habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). As set forth above, federal habeas relief is only available on grounds that a petitioner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Alleged errors of state evidentiary laws do not warrant habeas relief unless the error renders the proceeding so fundamentally unfair as to deprive the petition of due process under the Fourteenth Amendment. *McAdoo v. Elo*, 346 F.3d 159, 166 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 69–70 (1991)). Because the petitioner's freestanding state-law claim fails to state a cognizable basis for federal habeas review under 28 U.S.C. § 2254(a), the petitioner is not entitled to relief on the basis of this claim.

### C. Claim 3: Violation of Fifth Amendment

On cross-examination, the prosecutor asked the petitioner directly whether she was guilty on pending charges of shoplifting. The trial court required the petitioner to answer the question with a yes or no, and the petitioner responded yes. The trial court instructed the jury that it could consider this information only insofar as it pertained to the petitioner's credibility. The court later ruled that the state would not be able to introduce the petitioner's in-court confession in the criminal proceedings relating to the shoplifting charges. The petitioner insists that the trial court violated her rights under the Fifth Amendment of the United States Constitution and Article I § 9 of the Tennessee Constitution not to incriminate herself by requiring her to answer the prosecutor's question regarding her guilt on the shoplifting charges.

Insofar as the petitioner articulates a claim based on an alleged violation of the Tennessee Constitution, such claim is not cognizable on federal habeas review, regardless of whether it is exhausted. *Estelle*, 502 U.S. at 69–70. The petitioner did not raise her Fifth Amendment claim on direct appeal or in post-

conviction proceedings in the state court, and she is now barred from raising it in state court by the waiver and one-petition provisions of the Tennessee Post-Conviction Procedure Act. *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."); Tenn. Code Ann. § 40-30-102(c) ("In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment."). The claim is therefore deemed to be exhausted but procedurally defaulted. *Alley v. Bell*, 307 F.3d at 385–86. As such, it is barred from review unless, as set forth above, the petitioner establishes both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claim will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d at 321(citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The petitioner here does not acknowledge that her claim is procedurally defaulted. Consequently, she does not attempt to establish cause for the default or resulting prejudice, nor does she raise a plausible actual-innocence argument. The petitioner is therefore not entitled to relief on the basis of this claim.

### D. Claim 4: Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to claim successfully that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements: "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* Federal habeas relief, however, may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1), that it "involved an unreasonable application of" such law, § 2254(d)(1), or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (under AEDPA, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (internal quotation marks and citation omitted)).

Birdwell asserts that her trial counsel was ineffective in five specific ways: that counsel failed to (a) adequately prepare for trial; (b) protect the petitioner's Fifth Amendment right; (c) request a proper jury-out conference to discuss why evidence of the pending shoplifting charge was inadmissible; (d) adequately prepare and advise the petitioner prior to her testimony at trial, in particular by going over discovery with her; (e) subpoena material witnesses; and (f) properly advise the petitioner regarding the state's plea offer and to discuss the petitioner's actual chances of being convicted at trial.

### 1. Failure to Prepare for Trial

The petitioner argues that "counsel was not prepared to try [the] case" (ECF No. 2, at 10), and she argues in support of this claim that counsel met with her on only two occasions prior to trial and failed to go over discovery with her prior to trial.

In her initial state post-conviction brief, the petitioner articulated a claim that counsel was "ill-prepared to try the case" (Post-Conviction Br., at 13, ECF No. 23-14, at 19), but she did not present any argument in support of that claim. Instead, she argued that trial counsel failed to "adequately prepare the *Defendant* for trial." (Post-Conviction Br., ECF No. 23-14. at 21 (emphasis added).) In her appellate brief, the petitioner did not raise the attorney's failure to prepare, *per se*, as a discrete issue; rather, she pointed to the attorney's failure to meet with her as evidence in support of her claim that he did not adequately prepare her to testify and failed to review material discovery with her. These claims were raised in the state proceedings and are raised here as separate issues, as discussed below. The appellate court referenced the petitioner's and her counsel's testimony regarding how many times they met before trial, but did not specifically consider counsel's

failure to prepare himself for trial as a separate issue.

This Court finds that this claim was not presented in state-court proceedings under the same theory as it is presented here. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). Because it is now too late for the petitioner to raise the claim in state court, the claim is deemed to be exhausted but is procedurally defaulted and barred from review in this Court. The petitioner does not present any basis for overcoming the procedural default in this case. She is not entitled to relief on the basis of this claim.

### 2.  *Failure to Prepare the Petitioner to Testify and Failure to Provide Discovery*

The petitioner argued in both her initial post-conviction petition and on appeal that trial counsel failed to prepare her for her testimony at trial and, more specifically, that he failed to provide or go over discovery with her. In particular, the state's discovery responses included copies of two DVDs, one showing the petitioner's interview with detectives and the other a security video that showed the petitioner, Mayfield, and Atkins in the petitioner's truck at a Bi–Rite Store at 3:16 and again at 4:30 p.m., approximately twenty minutes before the trip to the Last Chance Market where the robbery and murder occurred. Although the petitioner articulates these claims as two separate issues,[2] they were considered by the state courts as essentially one issue. The Court therefore considers them together here.

The Tennessee Court of Criminal Appeals affirmed the trial court's rejection of the claims, first articulating and discussing the *Strickland* standard for establishing a claim of ineffective assistance of counsel and then concluding that, although counsel's performance in failing to provide the petitioner with discovery or, in fact, to review it himself prior to trial, fell below an objective standard of reasonableness, the petitioner failed to show that she was prejudiced by the deficient performance:

> Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*

---

[2] The petitioner articulated a separate claim based on trial counsel's failure "to properly advise [her] regarding . . . material elements of discovery" (ECF No. 2, at 13), combined under one heading along with the attorney's failure to advise her regarding the state's plea offer or to discuss the petitioner's actual chances of being convicted at trial. However, that section of the memorandum does not contain any argument regarding the trial counsel's failure to go over discovery with the petitioner. Instead, the argument in support of this claim is found in the section of the petitioner's brief concerning counsel's failure to prepare her to testify. (*Id.* at 12.)

> *v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368–72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id.* Failure to satisfy either prong results in the denial of relief. *Id.* at 697. . . .
>
> [T]he United States Supreme Court . . . ha[s] recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U.S. at 687. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." [*Id.*] at 689. . . .
>
> . . . .
>
> We now turn to the allegation that trial counsel failed to adequately prepare and advise the Petitioner prior to her testimony. Trial counsel admitted that he did not allow the Petitioner to review her actual statement to the police nor did he allow her to view the Bi–Rite video that was included in his discovery material, which he opined was "crucial" because it affected her credibility in the eyes of the jury. He also admitted that did not inform the Petitioner of the State's notice of impeachment regarding a pending theft case and that, if he could do anything differently, he would have conducted research on that impeachment issue. The post-conviction court found that there was no evidence in the record to support a finding that trial counsel was not adequately prepared for trial. However, our review of the record suggests that trial counsel's failure to view the Bi–Rite video and police statement with the Petitioner in preparation for her testimony, given his opinion that her credibility was the "linchpin" of the case, was deficient performance. Further, we also conclude that trial counsel's failure to research and prepare the Petitioner for possible impeachment based on the pending criminal case fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 690.
>
> Nevertheless, the Petitioner is still not entitled to relief on this issue because she has failed to show how the result would have been different if she had viewed the video. *See id.* at 694. The Petitioner did not present any evidence that she would not have testified if she had been informed that evidence of this pending conviction would have been admissible nor did she offer any evidence of prejudice other than stating she would have been "less surprised" and "better prepared." In fact, when asked how the outcome would have been different if trial counsel had done some of these things, the Petitioner stated, "I would have made a better witness. . . . I would have been able to present my testimony better and not been, I guess, blindsided by some of the stuff that was used." Given the strength of the State's case, we conclude that the Petitioner failed to prove that trial counsel's deficiencies prejudiced her.

*Birdwell v. State*, 2013 WL 6405733, at *5--6 (some internal citations omitted). In other words, the court found

that the petitioner's somewhat vague assertions that she would have made a better witness if she had gone

over the state's discovery and been prepared by her attorney to testify were not sufficient to establish that the

-12-

outcome of the trial would have been different.

As set forth above, the state court correctly articulated the *Strickland* standard for evaluating claims of ineffective assistance of counsel. And, although different minds could conceivably have reached a different conclusion, the court's determination that counsel's performance was deficient but that Ms. Birdwell was not prejudiced thereby did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on the basis of these claims.

Because counsel's performance was clearly deficient, as determined by the state court, this Court will grant a certificate of appealability as to the petitioner's claims that her trial attorney was constitutionally ineffective because he failed to prepare her to testify and failed to allow her to review the discovery provided by the state.

### 3. *Failure to Protect Fifth Amendment Privilege Against Self-Incrimination and Failure to Request Jury-Out Hearing*

The petitioner argues both that "[c]ounsel failed to protect Petitioner Birdwell's Fifth Amendment rights against self-incrimination by failing to object to the State's questions concerning the pending criminal charges" (ECF No. 2, at 11) and that counsel "failed to request a proper jury-out." (*Id.*) Because these claims are related, the Court will address them together.

The petitioner asserted a Fifth Amendment claim in her initial post-conviction petition (ECF No. 23-14, at 19, 26, Post-Conviction Pet'n at 13, 20); both she and trial counsel were questioned about it during the post-conviction hearing. (ECF No. 23-15, at 46–48; 116–17.) The petitioner also claimed that "counsel failed to request a jury-out hearing in reference to [the impeachment] evidence submitted under Tennessee Rules of Evidence 608 and 609." (ECF No. 23-14, at 19, 26, Post-Conviction Pet'n at 13, 20.) In her order denying Birdwell's post-conviction petition, the trial judge addressed the issue only as one of "impeachment" (ECF No. 23-14, at 49–50), and concluded that the court had complied with the requirements of Rule 608 of the Tennessee Rules of Evidence. The court did not address whether counsel was ineffective for failing to make an effort to protect his client's rights under the Fifth Amendment.

In her appeal before the Tennessee Court of Criminal Appeals, the petitioner did not articulate this claim as a Fifth Amendment issue. Instead, she argued only that trial counsel "failed to request a jury out hearing pursuant to Rule 608" and "should have conducted research about the issue prior to trial." (ECF No.

23-16, at 16–17.) The Tennessee Court of Criminal Appeals rejected this argument solely on the basis that, because a jury-out hearing was actually conducted, the petitioner could not have been prejudiced by trial counsel's alleged failures.

Regarding the claim that her Fifth Amendment right was violated, the Court finds that this claim was not actually presented to the Tennessee Court of Criminal Appeals under this theory and therefore was not fully exhausted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). More precisely, because the claim was not fully and fairly presented to the state courts, and a state-court remedy is no longer available under Tennessee law, *see* Tenn. Code Ann. §§ 40-30-102(a) (establishing one-year statute of limitations) *and* -102(c) (establishing a one-petition rule), the claim is technically exhausted but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 752–53 (1991); Wong, 142 F.3d at 321–22. The petitioner fails to acknowledge that the claim is defaulted, and does not assert any basis for review of the issue despite the default. The petitioner therefore may not obtain relief on the basis of this claim.

As for the claim that counsel's performance was ineffective insofar as he failed to request a jury-out hearing on the impeachment issue prior to the petitioner's testimony, the Court finds that the state court's conclusion that the petitioner was not prejudiced—because a jury-out hearing was actually conducted and the prosecutor was permitted to continue questioning the petitioner regarding the pending charge—did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on the basis of this claim either.

### 4. Failure to Subpoena Material Witnesses

The petitioner takes issue with her trial counsel's failure to discover, interview, and present Ralethia Mayfield as a witness to testify on the petitioner's behalf at trial. The petitioner asserts that, if she had been called, Mayfield "would have provided valuable, favorable testimony concerning the events that took place, showing that neither herself nor the Petitioner knew what was going to happen[] when they arrived at the liquor store." (ECF No. 2, at 12.) The petitioner asserts that the failure to call Mayfield prejudiced the petitioner because, if she had testified, the outcome of the trial would have been different.

This claim was fully exhausted in the state courts. In rejecting it, the Tennessee Court of Criminal Appeals found that the petitioner had failed to establish prejudice:

> Finally, turning to the Petitioner's allegation regarding trial counsel's failure to subpoena a material witness at the Petitioner's request, we conclude that the Petitioner has failed to show prejudice. To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present that witness at the post-conviction hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.
>
> The record reflects that the witness in question, Ms. Mayfield, was one of four people in the vehicle when the offenses occurred; however, she was not charged. The Petitioner testified that Ms. Mayfield would have corroborated her story that she was unaware that her co-defendants were going to commit a robbery when she drove them to the store that day. Although the Petitioner made some effort to secure the witness's testimony at the evidentiary hearing, and the post-conviction court granted a continuance to aid her in that endeavor, the witness did not show up. The Petitioner requested that the post-conviction court issue a material witness bond to compel Ms. Mayfield to testify; however, post-conviction counsel admitted that she had not "been as aggressive as [she] should" have been in securing the witness's presence and that she had not interviewed the witness to determine whether the witness's testimony would have, in fact, been favorable to the Petitioner. We conclude that the Petitioner has failed to establish that trial counsel's failure to secure Ms. Mayfield's testimony at trial resulted in prejudice to the Petitioner. Therefore, the Petitioner is not entitled to relief on this issue.

*Birdwell v. State*, 2013 WL 6405733, at *7 (internal citation and quotation marks omitted; footnote omitted[3]).

The state court applied the correct governing legal standard, and conclusion that the petitioner failed to establish prejudice—because she has not shown affirmatively what the substance of Mayfield's testimony would have been—did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on the basis of this claim.

### 6.     *Failure to Advise the Petitioner of the State's Plea Offer*

Finally, the petitioner argues that her trial attorney was constitutionally ineffective insofar as he failed to provide her "an *informed* opinion about whether to accept the state's 25-year offer," and that she was prejudiced by counsel's failure because, "with the proper advice, she would have accepted the state's offer of 25 years, in lieu of receiving a life sentence with no [parole] eligibility for 51 years." (ECF No. 2, at 14.)

The petitioner failed to raise this issue in the state post-conviction proceedings, at either the initial level of review or on appeal. Because it is now too late for the petitioner to raise the claim in state court, the

---

[3] The state court noted that the petitioner failed to appeal the post-conviction court's failure to issue a material-witness bond, so any challenge based on that refusal was waived.

issue is deemed to be exhausted but is procedurally defaulted and barred from review in this Court. The petitioner does not present any basis for overcoming the procedural default in this case. She is not entitled to relief on the basis of this claim.

## VI.     CONCLUSION

For the reasons set forth herein, Brandy Lea Birdwell's petition under § 2254 will be denied and this matter dismissed with prejudice.

Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Under the standard articulated in *Miller-El*, the Court finds that the petitioner's claims that her trial attorney was constitutionally ineffective because he failed to prepare her to testify and failed to allow her to review the discovery provided by the state merit further review. A COA will issue as to these claims.

An appropriate order is filed herewith.

                                                                     */s/ Todd Campbell*
                                                                     Todd Campbell
                                                                     United States District Judge